IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Paradise, Inc.<br>1200 Martin Luther King Jr. Blvd.<br>Plant City, Florida 33566<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Prime Health Dietary Supplements, Inc.<br>2140 Eastman Ave.<br>Suite 112<br>Ventura, CA 93003<br><br>　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 09-00784<br><br><br>Judge _____<br><br>Magistrate _____ |

**COMPLAINT FOR TRADEMARK**
**INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**

Plaintiff Paradise, Inc. ("Paradise"), for its complaint against Defendant Prime Health Dietary Supplements, Inc. ("Prime Health") states as follows:

**NATURE OF ACTION**

1.　This is an action for infringement of trademarks registered under the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, 15 U.S.C. § 1114(a); and false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

**THE PARTIES**

2.　Plaintiff Paradise, Inc. is a corporation organized under the laws of the State of Florida with its principal place of business at 1200 Martin Luther King Jr. Blvd., Plant City, Florida 33566.

3.      Paradise is one of the most well-known producers and suppliers of glace' (candied) fruit products in the United States.  Paradise, and its predecessors in interest, has been in the business of producing and supplying candied fruits for over 60 years.

4.      Until the 1960's, manufactures of candied fruit products primarily distributed their products to commercial bakers, making it difficult for a consumer to acquire candied fruit products for home baking uses.  Paradise lead the industry and began targeting the home-baking consumer in the 1960's by distributing its candied fruit products directly to consumers for home use via supermarkets and grocery stores.

5.      Through a series of mergers, acquisitions and licenses, Paradise has become the leading marketer of candied fruit products in the United States today.

6.      Paradise continually seeks opportunities for the expansion of its candied fruit product lines and expanded into the dried fruit snack line in 2007.

7.      Today, Paradise offers and sells its packaged dried fruit products under the federally registered THINKFRUIT® mark (the "Paradise Registered Mark") and has expanded its THINKFRUIT brand to include shakable dried fruit for use as a food topping.

8.      Defendant, Prime Health Dietary Supplements ("Prime Health"), upon information and belief, is a corporation organized under the laws of the state of California, with a principal place of business located at 2140 Eastman Ave., Suite 112, Ventura, California, 93003.

9.      Prime Health has no affiliation with Paradise.

10.     Prime Health is in the business of producing and distributing protein bars, meal replacement bars and nutritional bars.

11.     Prime Health has branded one of its meal replacement bars THINKFRUIT.

12. Upon information and belief, Prime Health offers and sells its THINKFRUIT meal replacement bar throughout the United States, including Ohio and, specifically, within this judicial district in supermarket and grocery store locations.

13. Defendant's recent adoption of an identical mark to that of the Paradise Mark, namely THINKFRUIT, for its sale of meal replacement bars, has caused actual confusion among consumers and has caused them to believe that Defendant is sponsored by or somehow affiliated with Paradise, which is false.

14. Defendant's recent adoption of an identical mark to that of the Paradise Mark, namely THINKFRUIT, for its sale of meal replacement bars, is likely to continue to confuse consumers and cause them to believe that Defendant is sponsored by or affiliated with Paradise, which is false.

## JURISDICTION AND VENUE

15. As this case states claims for infringement of trademarks, false designation of origin and unfair competition under the Lanham Act, this court has jurisdiction over this matter under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b).

17. Upon information and belief, Prime Health offers and sells its products to customers located in this judicial district.

## BACKGROUND FACTS

### The Paradise Mark

18. Founded shortly after the end of World War II, Paradise has offered numerous candied fruit food products for a wide variety of home cooking and baking purposes for over 60 years.

19. Paradise specifically targets sales of its candied fruit and peel products to non-commercial consumers by distributing its products in supermarkets and grocery stores throughout the United States, as well as for sale online via the Internet. In fact, Paradise was the pioneer in successfully marketing candied fruit food products to household consumers in the 1960's and is the leading producer of candied fruit products for household use today.

20. Since its foundation shortly after World War II, Paradise, and its predecessors in interest, has actively promoted its candied fruit products through extensive advertising and frequent attendance at, and sponsorship of, trade shows and exhibitions.

21. Since its foundation, Paradise, and its predecessors in interest, has actively sought opportunities for the expansion of its line of candied fruit food products.

22. Paradise seized an opportunity for product expansion into the dried fruit snack line in 2006, filing an intent-to-use application for THINKFRUIT for use in connection with "packaged dried fruit" on September 19, 2006.

23. Through its successful marketing efforts, Paradise launched its THINKFRUIT line of dried fruit products at least as early as October 23, 2007.

24. Paradise operates a website at www.thinkfruit-us.com where consumers can go to learn more about the THINKFRUIT dried fruit snack products, specifically its nutritional content and sales contact information. A photograph of Paradise's THINKFRUIT snack product is attached as Exhibit A.

25. Paradise owns the following federally registered trademark for use in connection with its packaged dried fruit product:

> THINKFRUIT, Registration No 3,436,692, registered May 27, 2008, for packaged dried fruit.

A certified copy of the certificate of registration for this trademark (the "Paradise Registered Mark") is attached to this complaint as Exhibit B. In addition, Paradise has obtained common law trademark rights in the THINKFRUIT mark through its use in commerce (the Paradise Registered Mark and the common law trademark are collectively referred to as the "Paradise Mark").

26. The certificate of registration identified in the preceding paragraph is valid and subsisting, and Paradise owns record title to the registered trademark described above.

27. The certificate of registration is prima facie evidence of the validity of the Paradise Mark, Paradise's ownership of the Paradise Mark, and Paradise's exclusive right to use the Paradise Mark, namely THINKFRUIT, in connection with the goods and services specified in the certificate of registration enumerated above under 15 U.S.C. § 1115(a).

28. The certificate of registration also provides constructive notice of Paradise's claim of ownership under 15 U.S.C. § 1072.

29. "ThinkFruit" is not generic or descriptive of a dried fruit product and has no particular meaning in the food industry.

30. Since launching its THINKFRUIT brand in 2007, Paradise has distributed its THINKFRUIT dried fruit products through retail supermarket and grocery store locations.

31. To date, Paradise has spent well over one (1) million dollars in marketing efforts for the promotion and sale of its THINKFRUIT line of dried fruit products.

32. Such marketing efforts have included the frequent attendance at trade shows and exhibitions in order to promote and introduce its THINKFRUIT line of dried fruit products to food retailers and distributors in traditional retail supermarket and grocery stores, as well as alternative "niche" markets.

33. Through its marketing efforts, Paradise has in fact expanded the distribution of its THINKFRUIT line of dried fruit products beyond traditional retail supermarket and grocery stores to also include alternative "niche" markets, such as the holiday/gift basket market.

34. In addition, Paradise has successfully negotiated agreements to begin distribution of its THINKFRUIT line of dried fruit products in travel centers (i.e. truck stops) and airport gift shops, as well as through online retailers, and grocery store distributors.

### Defendant's Infringing Activities

35. Prime Health is in the business of producing and distributing protein bars, meal replacement bars, and nutritional bars.

36. Defendant has adopted the THINKFRUIT mark for a line of meal replacement bars.

37. Defendant did not begin use of the THINKFRUIT mark until sometime after September 19, 2006.

38. Defendant filed the following trademark application with the United States Patent & Trademark Office on June 19, 2008:

> THINKFRUIT, Application Serial No. 77/503081, for meal replacement bars; nutritional energy bars for use as a meal substitute.

39. Defendant's THINKFRUIT trademark application has been examined and refused registration by the United States Patent & Trademark Office on the basis that there is a likelihood of confusion with the Paradise Registered Mark, namely THINKFRUIT for packaged dried fruit.

40. On April 8, 2009, Defendant sent Paradise a cease and desist letter wherein the Defendant, through its attorney, admitted that Defendant "offers fruit snacks similar to [Paradise's] products…" and further admitted to a likelihood of confusion. A copy of Defendant's cease and desist letter is attached as Exhibit C.

41. Defendant's recent adoption and continued use of the THINKFRUIT mark for its sale of meal replacement bars has caused actual confusion in the marketplace and has interfered with Paradise's exclusive right to the use of THINKFRUIT for the promotion of its packaged dried fruit products in the United States and has further interfered with Paradise's ongoing marketing and sales efforts.

42. Defendant's recent adoption and continued use of the THINKFRUIT mark for its sale of meal replacement bars is likely to continue to confuse consumers and cause consumers to believe that Defendant is sponsored by or affiliated with Paradise.

43. Paradise and Defendant are both using the THINKFRUIT mark on food and snack items directed towards consumers desiring healthy and/or all natural snacks.

44. Due to both Paradise's and Defendant's products being aimed at health-conscious "snackers", they are likely to be sold not only in the same retail stores, but in the same section of those stores.

## COUNT ONE
## TRADEMARK INFRINGEMENT – REGISTERED MARK

45. Plaintiff incorporates the allegations contained in paragraphs 1 through 44 as if fully restated herein.

46. Upon information and belief, Defendant adopted and began using the THINKFRUIT mark with knowledge of Plaintiff's prior use of the THINKFRUIT mark in the fruit snack industry.

47. Defendant's use of an identical mark to that of the Paradise Mark has created confusion among consumers through an association of sponsorship, affiliation or endorsement by Plaintiff. Such consumers have assumed that Plaintiff is somehow affiliated with, has authorized

or has licensed the Defendant to sell an expansion of Paradise's dried fruit line of products, which is false.

48. Defendant's use of an identical mark to that of the Paradise Mark will continue to create a likelihood of confusion among consumers through an association of sponsorship, affiliation or endorsement by Plaintiff. Such consumers will also assume that Plaintiff is somehow affiliated with, has authorized or has licensed the Defendant to sell an expansion of Paradise's dried fruit line of products, which is false.

49. The goodwill of the Paradise Mark, namely THINKFRUIT, is of enormous value, and Plaintiff is and will continue to suffer immediate and irreparable harm should Defendant's unauthorized offering of meal replacement bars under an identical mark continue.

50. The acts of Defendant in its unauthorized use of an identical mark to that of the Paradise Mark in connection with offering of meal replacement bars are intended to and will divert to the Defendant the benefit of the business reputation and goodwill symbolized by the Paradise Mark which belong exclusively to Plaintiff.

51. Defendant's infringing use of an identical mark to that of the Paradise Mark and its offering of meal replacement bars through distribution in supermarkets and grocery stores, as well as over the Internet, will likely continue unless enjoined by this Court.

52. Defendant's acts constitute infringement of the Paradise Mark under 15 U.S.C. § 1114(a).

53. Defendant's actions complained of herein have been willful.

54. Plaintiff is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

## COUNT TWO
## TRADEMARK INFRINGEMENT – COMMON LAW

55. Plaintiff incorporates the allegations contained in paragraphs 1 through 54 as if fully restated herein.

56. Upon information and belief, Defendant adopted and began using the THINKFRUIT mark with knowledge of Plaintiff's prior use of the THINKFRUIT mark in the fruit snack industry.

57. Defendant's use of an identical mark to that of the Paradise Mark has created confusion among consumers through an association of sponsorship, affiliation or endorsement by Plaintiff. Such consumers have assumed that Plaintiff is somehow affiliated with, has authorized or has licensed the Defendant to sell an expansion of Paradise's dried fruit line of products, which is false.

58. Defendant's use of an identical mark to that of the Paradise Mark will continue to create a likelihood of confusion among consumers through an association of sponsorship, affiliation or endorsement by Plaintiff. Such consumers will also assume that Plaintiff is somehow affiliated with, has authorized or has licensed the Defendant to sell an expansion of Paradise's dried fruit line of products, which is false.

59. The goodwill of the Paradise Mark, namely THINKFRUIT, is of enormous value, and Plaintiff is and will continue to suffer immediate and irreparable harm should Defendant's unauthorized offering of meal replacement bars under an identical mark continue.

60. The acts of Defendant in its unauthorized use of an identical mark to that of the Paradise Mark in connection with the offering of meal replacement bars are intended to and will divert to the Defendant the benefit of the business reputation and goodwill symbolized by the Paradise Mark which belong exclusively to Plaintiff.

61. Defendant's infringing use of an identical mark to that of the Paradise Mark and its offering of meal replacement bars through distribution in supermarkets and grocery stores, as well as over the Internet, will likely continue unless enjoined by this Court.

62. Defendant's acts constitute infringement of the Paradise Mark under 15 U.S.C. § 1125(a).

63. Defendant's actions complained of herein have been willful.

64. Plaintiff is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

## COUNT THREE
## TRADEMARK INFRINGEMENT – REVERSE CONFUSION

65. Plaintiff incorporates the allegations contained in paragraphs 1 through 64 as if fully restated herein.

66. Upon information and belief, Defendant's use of the THINKFRUIT mark in connection with meal replacement bars was with knowledge of Plaintiff's prior use and federal registration of its THINKFRUIT® mark.

67. Defendant has swamped the market with promotional materials displaying the THINKFRUIT mark, creating reverse confusion through an association in the minds of consumers of sponsorship, affiliation or endorsement by Defendant of Plaintiff's dried fruit products.

68. Defendant's advertising containing the THINKFRUIT mark on the internet and throughout the country has overwhelmed Plaintiff's efforts to continue to advertise, expand and grow its business, resulting in a loss of value of the THINKFRUIT mark, its goodwill and reputation.

69. As a result of Defendant's use of the THINKFRUIT mark, consumers who see Plaintiff's advertising or purchase Plaintiff's dried fruit product will assume that Paradise is somehow affiliated with, has been endorsed by or is otherwise approved by Defendant, which is false.

70. The acts of Defendant in their unauthorized use of THINKFRUIT in connection with meal replacement bars will also hinder Plaintiff's exclusive right and ability to naturally grow and expand its business.

71. The goodwill of the THINKFRUIT mark is of enormous value, and Plaintiff is and will continue to suffer immediate and irreparable harm should Defendant's use of the THINKFRUIT mark continue.

72. The acts of Defendant in their unauthorized use of THINKFRUIT in connection with meal replacement bars are intended to and will divert to the Defendant the benefit of the business reputation and goodwill symbolized by the THINKFRUIT mark which belong exclusively to Plaintiff. Such acts will confuse potential customers into thinking that Plaintiff is somehow affiliated with or connected with Defendant.

73. Defendant's use of materials bearing the THINKFRUIT mark, and offering its meal replacement bars to consumers using the THINKFRUIT mark over the Internet will likely continue unless enjoined by this Court.

74. Paradise is entitled to a permanent injunction against Defendant as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

## COUNT FOUR
## FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION

75. Plaintiff incorporates the allegations contained in paragraphs 1 through 74 as if fully restated herein.

76. Defendant's use of an identical mark to that of the Paradise Mark in connection with its offering of meal replacement bars falsely represents that such goods originate with, are sponsored, endorsed, underwritten or licensed by Plaintiff.

77. Defendant is an unauthorized user of an identical mark to that of the Paradise Mark and Plaintiff cannot exercise any control over the nature and quality of Defendant's meal replacement bars, nor the customer service it provides to its consumers.

78. Upon information and belief, Defendant's false designation of origin has been willful and deliberate, designed specifically to trade upon the consumer goodwill enjoyed by Plaintiff in the food and food grocer industry.

79. Plaintiff's consumer goodwill is of enormous value, and Plaintiff will suffer irreparable harm if Defendant's false designation of origin as to the Paradise Mark is allowed to continue.

80. Defendant's false designation of origin will likely continue unless enjoined by this Court.

81. Plaintiff is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

WHEREFORE, Plaintiff requests that the Court order:

1. The issuance of a permanent injunction enjoining Defendant and its agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from using the Paradise Mark,

namely "THINKFRUIT", or any mark confusingly similar thereto in any manner in advertising, promoting or sale of any meal replacement bars or similar food product, and from infringing or falsely designating the origin of the Paradise Mark;

2. That Defendant account to Plaintiff for its profits, the actual damages suffered by Plaintiff and as a result of Defendant's acts of infringement and false designation of origin, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Plaintiff's rights;

3. That Defendant recall and destroy all products and inventory bearing the Paradise Mark, namely "THINKFRUIT";

4. The issuance of a permanent injunction enjoining Defendant from using the Paradise Mark, namely "THINKFRUIT", or any mark confusingly similar thereto for any meal replacement bars or similar food product, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Plaintiff with Defendant;

5. That Defendant surrender all copies of any materials mentioning any meal replacement bars or similar food product, that they have created or obtained bearing the Paradise Mark, namely "THINKFRUIT", or any mark confusingly similar thereto for destruction, and that they be enjoined from creating, purchasing or acquiring such materials in the future or placing them on a website;

6. That Defendant provide a list of all clients of its services and send each client a letter, approved in advance by Plaintiff, advising that they are not connected or affiliated with Plaintiff and informing each client of Defendant's new brand name for its meal replacement bars;

7. That Defendant pay compensatory and treble damages to Plaintiff;

8. That Defendant disgorge all profits realized from their offering of meal replacement bars or similar food products under the Paradise Mark, namely "THINKFRUIT", or any mark confusingly similar thereto;

9. That Defendant pay Plaintiff's attorneys' fees, together with the costs of this suit; and,

10. All other and further relief as may be just and equitable.

- 14 -

    Respectfully submitted,

    */s/ Brian J. Downey*
    Brian J. Downey (Trial Attorney)(0069163)
    Samantha M. Quimby (0081968)
    FROST BROWN TODD, LLC
    10 West Broad Street
    Suite 2300
    Columbus, OH 43215
    Telephone:  (614) 464-1211
    Facsimile:  (614) 464-1737

    Attorneys for Paradise, Inc.